UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALEO ELECTRICAL                                    Case No. 08-12486
SYSTEMS, INC.,

              Plaintiff,                            HONORABLE SEAN F. COX
                                                    United States District Judge

v.

CLEVELAND DIE &
MANUFACTURING CO.,

              Defendant.
_____/


OPINION & ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DOC. NO. 19]

        This Michigan state law breach of contract action was filed by Plaintiff Valeo Electrical

Systems, Inc. ("Valeo") in the Oakland County, Michigan, Circuit Court on May 9, 2008.

Defendant Cleveland Die & Manufacturing Co. ("Cleveland Die") filed a timely notice of

removal on June 10, 2008.  The matter is currently before the Court on the Plaintiff Valeo's

Motion for Summary Judgment [Doc. No. 19].   The parties have fully briefed the issues, and a

hearing was held on Thursday, April 2, 2009.  For the reasons that follow, the Court **DENIES**

Valeo's Motion for Summary Judgment [Doc. No. 19].

BACKGROUND

        Valeo is a manufacturer of automotive parts, and supplies windshield wiper systems to

automotive manufacturers.  Cleveland Die makes steel component parts for use in the

automotive industry.  In 2004, Valeo issued, and Cleveland Die accepted, two purchase orders

[Pl.'s Ex 14] requiring Cleveland Die to produce windshield wiper motor brackets (known as

1

"W-Car Brackets") and front wiper module drive links.  These purchase orders required conformity to exact engineering and quality specifications, including the grade of steel the goods needed to be manufactured from.  To fill Valeo's purchase order, Cleveland Die contracted with a third party, Hall Steel Company ("Hall Steel"), to purchase steel on credit.

In December of 2004, Valeo informed Cleveland Die that a substantial portion of the W-Car Brackets Cleveland Die had delivered failed to conform with required specifications, as the steel used in their manufacture was sub-par.  This caused Valeo to breach its agreement with General Motors to supply conforming wiper systems, which resulted in General Motors charging Valeo substantial sums for Valeo's delivery of the defective windshield wiper systems.

<u>The State Court Action Between Hall Steel & Cleveland Die</u>

On May 30, 2006, Hall Steel filed suit against Cleveland Die in the Wayne County, Michigan, Circuit Court, seeking to collect on accounts receivable in the amount of $506,288.83 for the steel it delivered to Cleveland Die on credit related to the Valeo orders.

Cleveland Die filed its Answer and Counterclaims on July 14, 2006, stating that Hall Steel "provided [Cleveland Die] with defective steel that was unfit for [Cleveland Die's] intended use . . . ." [Pl.'s Ex. 3, ¶ 19].  During discovery proceedings, Cleveland Die asserted that the steel Hall Steel had sold them was defective:

> . . .Cleveland Die attempted to sell Valeo products which incorporate steel received from hall and which was rejected by Valeo because the steel supplied by Valeo did not match the specifications of Valeo's and Cleveland Die's purchase order.

[Answer to Interrogatory 7, Pl.'s Ex 16].

Cleveland Die and Hall Steel agreed to binding arbitration to resolve these issues, signing

2

an agreement submitting the case to arbitration on September 28, 2007 [Pl.'s Ex. 5].  This

agreement provided that "[a]ll pleadings and other documents filed in the [Circuit Court]

litigation shall remain in effect for the Arbitration proceeding..." [Pl.'s Ex. 5, ¶ 3.1.1].

During arbitration, Hall Steel sought to preclude Cleveland Die from introducing

evidence of the warranty claims incurred by Cleveland Die, "unless [Cleveland Die] has actually

paid these amounts to Valeo." [Pl.'s Ex. 8, p.1].  In response, Cleveland Die states as follows:

> ...Cleveland Die has received three (3) separate documented demands for payment
> of specific, quantified warranty claims from its customer (Valeo) related to the
> recall involving the Problem Steel produced by Hall.  *Neither the probability of
> these damages, nor the amount of these damages is in doubt.*

*Id*. (emphasis added).  Ultimately, the arbitrator considered the amount of these damages in his

arbitration award.

In its arbitration summary [Pl.'s Ex. 6], Cleveland Die continued to allege that Hall Steel

was liable for shipping Cleveland Die nonconforming steel:

> Hall Steel sold [Cleveland Die] steel that was mislabeled.  Hall has admitted its
> error.  Hall's error directly resulted in the rejection of auto part's by [Cleveland
> Die's] customer, and the amount of these rejections is real and documented . . . .

[Pl.'s Ex. 6, p.5].  The arbitrator accepted Cleveland Die's position, finding that "Hall was

responsible for its failure to ship proper steel to Cleveland." [Arbitration Award, Pl.'s Ex. 9, p.2].

 Because of this, the arbitrator reduced the amount of money Hall was entitled to in satisfaction

of the accounts receivable with Cleveland Die[1].  *Id*. at 2.

While the arbitrator reduced Cleveland Die's accounts receivable debt to Hall Steel, the

arbitrator also incorporated, and appears to have relied upon, Cleveland Die's argument that

---

[1] The arbitrator reduced the amount owed to Hall on Cleveland Die's accounts receivable from
$506,000 to $217,413. [Pl.'s Ex. 9, p.2].

3

design defects by Valeo may have played a role in the W-Car Bracket defects.  In the "Damages"

section of the Hall Steel Arbitration Award [Pl.'s Ex. 9], the arbitrator found as follows:

> The Arbitrator finds the testimony of Jeff Shay to be credible, in that the damages
> from debits were $288,567, which Valeo charged against Cleveland.  *Juan
> Chadha, president of Cleveland, testified that amounts owed in Exhibits 39A, B
> and C were not paid, and set out the reasons why the additional funds were not
> owed.  (Exhibit 21)* Accordingly, the Arbitrator finds that Cleveland has set out its
> defenses and has not paid any amounts owing over the $288,587, which was
> deducted by Valeo, and that the proper setoff is $288,587.

[Arbitration Award, Pl.'s Ex. 9, p. 2, § 2 (emphasis added)].

Both parties to this lawsuit, Valeo and Cleveland Die, have stipulated for purposes of this

motion that the "Exhibit 21" referenced in the Arbitration Award was a letter, dated May 6,

2006, from a plant manager for Cleveland Die, Vladimir Haoui, to Mr. James Gaylord of Valeo

("the May 6, 2006 Letter").  The body of the May 6, 2006 Letter, in its entirety, reads as follows:

> We recently received an invoice for approximately $445000.00 from VALEO for
> the W-Car Bracket Recall.  As you know, Cleveland Die and Manufacturing
> position on this issue has not changed and we are rejecting your claim.  Also,
> please note the following:
> 1. The problem with the bracket is not a current issue and was in
>    existence at VALEO's previous supplier,
> 2. As you already know, prior to CDM - SUPPLIER steel issue, VALEO
>    had and continues to have a warranty problem with this part due to
>    design issues,
> 3. Prior to CDM - SUPPLIER steel issue, CDM proposed to make an
>    engineering change at no cost to VALEO to correct existing
>    problem; our proposal was rejected by VALEO,
> 4. Valeo elected to take a chance in exposing this product to the consumer
>    and jeopardize both VALEO and CDM businesses,
> 5. VALEO has failed to corral the situation,
> 6. VALEO, prior to CDM - SUPPLIER steel issue, was welding a
>    reinforcement plate to temporarily fix the problem,
> 7. VALEO requested to change the material thickness and type several
>    times,
> 8. In addition, and as you know, CDM had already absorbed and settled

4

most of the previous claim,

9.  Furthermore, CDM does not have any leverage on its former supplier,

10.  In September of last year, Juan Chadha spoke to you verbally and
     agreed in principal that the issue of the W-Car is no longer an issue
     and that both companies would be moving on with their future
     after all tools are pulled out of CDM.

Therefore, and for the above mentioned reasons, CDM requests a formal letter
from VALEO to clear Cleveland Die from any further recalls and liabilities.
Please note that Cleveland Die has lost its business with VALEO and has worked
throughout with your company in good faith to make sure your exit and
separation from CDM was flawless and without any interruptions to VALEO.

Your cooperation in this matter is greatly appreciated.

[Def.'s Ex. B, Doc. No. 47].  Thus, the Arbitration Award itself in the Hall Steel Case shows that

the arbitrator considered that Cleveland Die may have defenses to Valeo's claims - i.e., defenses

related to design defects - in his final arbitration award.

<u>The Instant Lawsuit Between Valeo and Cleveland Die</u>

On May 9, 2008, Valeo filed a Complaint against Cleveland Die in the Oakland County,

Michigan, Circuit Court to recover damages caused by Cleveland Die's shipment of

nonconforming W-Car Brackets.  Cleveland Die removed the case to this Court, on diversity of

citizenship grounds, on June 10, 2008.

Cleveland Die denies that it bears sole responsibility for the defective W-Car Brackets.

Their Answer to Cleveland Die's Complaint [Pl.'s Ex. 12], includes the following responses:

15.  The Defective W-Car Brackets were manufactured by Cleveland Die with
material that did not meet the W-Car Bracket Specifications regarding yield
strength:

ANSWER: Deny.

18.  The windshield wiper systems failed because they had incorporated Defective
W-Car Brackets.  Because the Defective W-Car Brackets were made of
nonconforming material, a tab on the Defective W-Car Brackets bends when the

5

wipers encounter an ordinary restriction (including, for example, snow-pack). Once the tab on the Defective W-Car Brackets is bent, the windshield wipers no longer return to the parked position.

ANSWER: Deny.

21.  Valeo, in conjunction with Cleveland Die, determined that the Defective W-Car Brackets were caused by Cleveland Die's use of material which did not meet the W-Car Bracket Specifications.

ANSWER: Deny.

26.  To date, Valeo's customer has charged Valeo $1,445,642.24 on account of the Defective W-Car Brackets.

ANSWER: Defendant is without information sufficient to admit or deny this allegation.

In its initial discovery responses, Cleveland Die contended that it was not Cleveland

Die's nonconforming steel that was solely responsible for the defective W-Car Brackets, but

rather that the failure of the W-Car Brackets was caused by a design defect:

The windshield wiper bracket was a part with a history of problems, predating [Cleveland Die's] manufacture of this part.  On at least one prior occasion, [Cleveland Die] suggested engineering changes designed to remedy the inherent design flaw created by [Valeo].  For reasons that remain unclear, [Valeo] ignored such recommendations.

[Response to Interrogatory 3, Pl.'s Ex. 21, p.15].

<u>Valeo's Motion For Summary Judgment on Judicial Estoppel Grounds</u>

Valeo filed the instant Motion for Summary Judgment [Doc. No. 19] on November 26,

2008.  Valeo argues as follows:

In a prior proceeding involving its steel supplier . . . Cleveland Die successfully argued that it owed Valeo substantial damages for breach of contract because Cleveland Die's steel supplier had provided it with nonconforming and defective steel which it incorporated into parts supplied by Valeo, causing these parts to fail.  If this Court were to accept Cleveland Die's newfound position, then either this Court or the prior tribunal will have been misled.  The doctrine of judicial

6

estoppel is designed to prevent precisely this type of conduct.

[Pl.'s Motion for Summary Judgment, Doc. No. 19, p. 2].

In arguing against Valeo's Motion for Summary Judgment, Cleveland Die argues that its "responsibility is not clearly inconsistent with its position or the arbitrator's decision in the Hall Litigation . . . ." [Def.'s Br., Doc. No. 24, p. 7]. Cleveland Die further objects to Valeo asserting the defective steel was "the <u>sole</u> contributing factor to Cleveland Die's manufacture" of the W-Car Brackets. *Id*. at 8 (emphasis in original). Finally, Cleveland Die explains their previous willingness to place all the blame for the defective brackets on faulty steel as follows:

> Until asserted in the present lawsuit, Cleveland Die simply took Valeo's claims at face value. As a relatively smaller company (compared to its then customer, Valeo), Cleveland Die initially (albeit reluctantly) acquiesced in Valeo's unilateral chargeback. Cleveland Die was hopeful that Valeo would ultimately compromise its claims.

*Id*. at 16.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty*

7

*Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

## ANALYSIS

Valeo argues that Cleveland Die should be judicially estopped from denying both the existence and the specific amount of damages it owes to Valeo due to its litigation posture in the prior arbitration proceeding with Hall Steel.  "The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982).

> The purpose of the doctrine is to protect the courts from the "perversion of judicial machinery."  Courts have used a variety of metaphors to describe the doctrine, characterizing it as a rule against "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "having one's cake and eating it too."

*Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472 (6th Cir. 1998) (internal citations omitted).  Thus, the doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Industries v. National Labor Relations Board*, 911 F.2d 1214, 1217 (6th Cir. 1990).

The Sixth Circuit has counseled that courts should apply the doctrine of judicial estoppel "with caution to avoid impinging upon the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008).  Although "no set formula [exists] for assessing when judicial estoppel should apply," *In re Commonwealth Institutional Sec.*, 394 F.3d 401, 406 (6th Cir. 2005), the United States Supreme

8

Court has laid out three factors relevant to the consideration:

> First, a party's later position must be "clearly inconsistent" with its earlier position . . . Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations omitted).  While the Supreme Court chose to enumerate these factors, they were not intended to be exhaustive. "Additional considerations may inform the doctrine's application in specific factual contexts." *Id*. at 751.

In the instant case, Cleveland Die's "design defect" defense in this case does not meet any of the Supreme Court's three factors, laid out in *New Hampshire*, warranting the application of the doctrine of judicial estoppel.

I.  Cleveland Die's "Design Defect" Argument is Not "Clearly Inconsistent" With it's Prior Position in the Hall Steel Litigation.

Cleveland Die's position in the instant litigation is not "clearly inconsistent" with their litigation strategy against Hall Steel in the prior action.  The May 6, 2006 Letter outlines the "design defect" argument Cleveland Die advances in this litigation, and in referencing that document in the Arbitration Award, the arbitrator clearly considered the possibility that Cleveland Die could take such a position in the future.

Valeo further argues that Cleveland Die admitted in the prior litigation with Hall Steel that "[n]either the probability of these damages, not the amount of these damages is in doubt," [Pl.'s Ex. 8, p. 1], and admitted that the amount of those damages equaled $1,445,641. [Pl.'s Ex.

9

6, p. 5].  As Cleveland Die argues, however [Def.'s Br., Doc. No. 47, p. 4 ], all this statement

proves is that Cleveland Die received a demand from Valeo for payment in a specific amount.

Such statements do not evidence an intent by Cleveland Die to concede the validity of Valeo's

claims; in fact, the May 6, 2006 Letter indicates that Cleveland Die *refuted* the validity of such

claims by Valeo.

　　　Given these facts, the Court holds that Valeo has not satisfied the first *New Hampshire*

requirement of showing Cleveland Die's "design defect" argument is "clearly inconsistent" with

the litigation posture Cleveland Die took in the Hall Steel Litigation.

　　　II.　As No "Clear Inconsistency" Exists Between Cleveland Die's Litigation Postures, No
　　　　　Inference Arises that Either This Court or the Arbitrator Was Misled.

　　　The arbitrator accepted, and explicitly incorporated into his arbitration award, Cleveland

Die's current argument that Valeo's design defects in the W-Car Brackets could absolve

Cleveland Die of some of its liability to Valeo.  Valeo's argument in the instant motion is that, in

essence, Cleveland Die convinced the arbitrator that the W-Car Brackets' failure was *solely*

caused by Hall Steel's defective steel.  That position is not supported by the outcome the

arbitrator arrived at in rendering his award.

　　　While the arbitrator specifically found that "Hall was responsible for its failure to ship

proper steel to Cleveland[,]" [Arbitration Award, Pl.'s Ex. 9, p.2], and that, as a result of Hall's

breach, Cleveland Die had "lost their contract with its supplier, Valeo, and owes $1,455,641 by

virtue of Hall's breach of contract[,]" *Id*. at 1, the arbitrator did not attribute the entire

$1,455,641 in damages to Hall Steel's breach.  Rather, the arbitrator only credited Cleveland Die

for the $288,587 that Valeo had already taken unilateral action in setting off from debts owed by

Valeo to Cleveland Die.  Had the arbitrator relied upon the argument Valeo claims Cleveland

Die made in the Hall Steel Litigation, i.e., that Hall Steel was *solely* responsible for the entire amount of damages to Valeo, the arbitrator would not have merely credited the $288,587 already paid by Cleveland Die, *but would instead have credited the entire $1,445,641*.  That the arbitrator did not do this, however, is evidence that the arbitrator did *not* find that the defective steel was the *sole* cause of Valeo's damages.   Accordingly, Valeo has failed to satisfy the second prong of the Supreme Court's *New Hampshire* test.

     III.   Cleveland Die Derives no "Unfair Advantage" in the Instant Litigation.

     Cleveland Die does not "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" from arguing that design defects were partly to blame for the failure of the W-Car Brackets.  *New Hampshire* at 571.  As evidenced by the May 6, 2006 Letter, Cleveland Die and Valeo have had ongoing discussions regarding the potential causes of the W-Car Bracket defects.  While Cleveland Die argued in the Hall Steel Litigation that Hall Steel's defective product was *partly* to blame for the W-Car Bracket failure, Cleveland Die set out it's "design defect" argument as well in that proceeding, and the arbitrator relied on that argument in reducing, but not entirely absolving, Cleveland Die's debt to Hall Steel.  Valeo has not shown any unfair advantage to Cleveland Die, or unfair detriment to Valeo, derived from the Hall Steel Litigation, and as such fails to satisfy the third prong of the *New Hampshire* test.

CONCLUSION

     For the reasons explained above, the Court **DENIES** Plaintiff Valeo's Motion for Summary Judgment [Doc. No. 19].

     **IT IS SO ORDERED**.

11

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  July 1, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 1, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager